# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| MICHAEL LAMON DANSER, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 4:20-cv-01846 |
| DISCOVER FINANCIAL SERVICES, INC., CREDIT SOLUTIONS CORP., PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC., EXPERIAN INFORMATION SOLUTIONS, INC., and TRANSUNION, LLC. | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

**NOW COMES** MICHAEL LAMON DANSER ("Plaintiff"), by and through his undersigned counsel, complaining of the Defendants, DISCOVER FINANCIAL SERVICES, INC., CREDIT SOLUTIONS CORP., PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC., EXPERIAN INFORMATION SOLUTIONS, INC., and TRANSUNION LLC, (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1.  Plaintiff brings this action seeking redress for violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 against all Defendants and for violations of the Fair Debt Collections Act pursuant to 15 U.S.C. § 1692 against Defendants Credit Solutions Corp., and Professional Bureau of Collections of Maryland, Inc.

**JURISDICTION AND VENUE**

2.   Subject matter jurisdiction is conferred upon this Court by the FCRA, FDCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff is domiciled in this District and a substantial part of the events or omissions giving rise to the claims occurred within this District.

**PARTIES**

4.   Plaintiff is a natural person over 18-years-of-age who, at all times relevant, resided in the Harris County, Texas.   Plaintiff is a decorated United States military veteran.

5.   Defendant Discover Financial Services, Inc. ("Discover") is a foreign corporation with its principal place of business in Riverwoods, Illinois. Discover is in the business of providing a full range of financing services to consumers across the country, including in the State of Texas. Discover is a furnisher of information to the major credit reporting agencies, including Experian and TransUnion.

6.   Defendant Credit Solutions Corp. ("CSC") is a foreign corporation with its principal place of business in San Diego, California.  CSC is a debt collector who purchases charged off accounts from banks and other financial service companies and then seeks to collect on those accounts from consumers across the country, including in the State of Texas.  CSC is a furnisher of information to the major credit report agencies, including Experian and TransUnion.

7.  Defendant Professional Bureau of Collections of Maryland, Inc. ("PBCM") is a foreign corporation with its principal place of business in Greenwood Village, Colorado.  PBCM is a debt collector who offers recovery programs for banks and credit unions, financial institutions, collection agencies, property management, healthcare, and telecommunications providers.  PBCM

2

is a furnisher of information to the major credit reporting agencies, including Experian and TransUnion.

8.  Defendant Experian is a foreign corporation with its principal place of business in Costa Mesa, California. Experian is regularly engaged in the business of assembling or evaluating, and maintaining, for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity on a nationwide basis, including in Texas.

9. Defendant TransUnion is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois. TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in Texas.

## FACTS SUPPORTING CAUSES OF ACTION

10. On August 1, 2001, Plaintiff joined the United States Army ("the Army").  Plaintiff was deployed to Iraq on a number occasions where he actively engaged in combat.

11.  In connection with his military service, Plaintiff suffered a number of injuries.

12.  On April 19, 2011, due to his injuries, Plaintiff was medically discharged from the Army and was awarded the Combat Action Badge, [1] as well as several other medals, in connection with his service.

13. Plaintiff was rendered permanently disabled and required assistance with his daily activities.

---

[1] A Combat Action Badge is awarded to those soldiers of the United States Army for being present and actively engaging or being engaged by the enemy, and performing satisfactorily in accordance with the prescribed rules of engagement.

14. In or about 2013, Plaintiff hired a caretaker named "Reba" to assist him. Reba's employment included, but was not limited to, assisting Plaintiff with his daily activities such as bathing, getting dressed, eating, and paying his bills. In order to assist Plaintiff, Reba was required to have access to Plaintiff's personal identifying information. [2]

15. In or about 2015, Plaintiff noted many collection accounts reporting negatively on his credit reports and which did not belong to him.

16. The unauthorized accounts, included but were not limited to, Discover (reporting by Experian as "in collection," with a balance of "$3800" and over "120 days past due), CSC (reporting by TransUnion and Experian as originating from an Anheuser-Busch debt and "in collection" with a balance of "$6131" and a second CSC account reporting by TransUnion only as "in collection" with a balance of $10,284), and PBCM (reporting by TransUnion as originating from Pentagon Federal Credit Union and "in collection").

17. In connection with these unauthorized accounts, Plaintiff noted that his credit score had dropped substantially.

18. Plaintiff was upset to see these adverse accounts and the effect they had on his credit rating because he had always maintained a high credit rating.

19. Plaintiff suspected that he had become a victim of identity theft.

20. On October 29, 2015, Plaintiff filed a police report (or "identify theft report") with his local police department listing the various unauthorized adverse accounts on his credit reports.

21. Between 2015 and the present time, Plaintiff sent between 14 and 19 written disputes to Experian and TransUnion asking to remove the unauthorized accounts. Each time Plaintiff did so, he included an identity theft report and supporting identifying documentation.

---

[2] Reba worked for Plaintiff until 2018 at which time Plaintiff had become more self-dependent and no longer required her services.

22.  Upon information and belief, Defendants Discover, CSC, and PBCM received Plaintiff's dispute letters and all enclosed supporting documents from Experian and TransUnion within five days of their receipt of Plaintiff's dispute.

23. In addition to written disputes, between April 2019 and the present time, Plaintiff had multiple phone conversations with Experian and TransUnion both to verify receipt of his disputes and to inquire as to the reasons why the unauthorized accounts remained on his credit reports despite being victim of identity theft.   Upon information and belief, Experian and TransUnion recorded each of these conversations.

24. The credit reporting agencies advised Plaintiff to update his identity theft report and otherwise just gave him a "runaround" as to why the adverse accounts remained on his credit reports.

25.  Per the direction of the credit reporting agencies, Plaintiff filed updated identity theft reports with his local police department and the Federal Trade Commission ("FTC").

26. Plaintiff was forced to file or otherwise update his identity theft reports on several occasions to reflect to most recent information on his credit reports at the time of a particular dispute.[3]  Plaintiff included updated identity theft reports with his written disputes to TransUnion and Experian.

27.  Once such example of a recent written dispute to TransUnion stated, in pertinent part, the following:

> I am stating, I have not received any goods, merchandise, or services from you or the furnisher . . .
>
> Here are the items in question:

---

[3] For example, it was common that, pursuant to a dispute, a credit reporting agency would remove one of the unauthorized collection accounts from Plaintiff's credit report only to re-insert that same account a short time later.

5

1   CREDIT SOLUTIONS CORP 45079XX[4]
2   PROFESSIONAL BUREAU OF C CRM313XXX

THESE ACCOUNTS ARE FRAUDLANT [SIC], YET YOUR ORGANIZATION
CONTINUES TO REPORT THIS INFORMATION ON MY REPORT EVEN
AFTER I HAVE DISPUTED THIS NUMEROUS TIMES.  REMOVE FROM
THE ABOVE FDCPA VIOLATIONS AND 605B. REMOVE AND PROVIDE
ME WITH AN UPDATED COPY OF MY REPORTS.

28. Another example of a recent written dispute to Experian stated, in pertinent part, the

following:

I HAVE RECENTLY ADDRESSED THE FOLLOWING ACCOUNTS WITH
YOUR AGENCY.
. . .
2.       CREDIT SOLUTIONS CORP 450799X
. . .
4.       DISCOVER FIN SVCS LLC 601120XXXXXX

THESE ACCOUNTS ARE FRAUDLANT [SIC], YET YOUR ORGANIZATION
CONTINUES TO REPORT THIS INFORMATION ON MY REPORT EVEN
AFTER I HAVE DISPUTED THIS NUMEROUS TIMES.   I HAVE
CONTACTED HOUSTON POLICE DEPARTMENT, I HAVE SPOKE WITH
SERGENT HYDE, SUPERVISOR OF THE FRAUD DEPARTMENT (713-308-
09XX).   I WOULD LIKE THIS INFORMATION REMOVED FROM MY
ACCCOUNT IMMEDIATELY AND A COPY OF MY UPDATED CREDIT
REPORT MAILED TO MY ADDRESS AS LISTED ABOVE.

I AM FULLY AWARE OF MY RIGHTS AS LISTED IN FCRA § 605b (15 U.S.C
1681c-2). PLEASE REMOVE THIS INFORMATION IMMEDIATELY

29. Despite's Plaintiff's efforts and numerous disputes, Defendants removed only some of the

negative accounts from Plaintiff's credit reports while others remained.[5]

30. On or about February 7, 2020, Plaintiff received a strange anonymous phone call. The

caller, a person with a male voice, asked Plaintiff why his wife had Plaintiff's personal information,

including a photocopy of his driver's license and social security number.  Plaintiff then asked the

---

[4] It should be noted that TransUnion continues to report what appears to be to separate collection accounts for
CSC, one with a balance of $6131 and another with a balance of $10,284.
[5] The removal of some and not all of the collection accounts, and not others, did not help Plaintiff as he continued
to have a low credit rating.

caller to identify his wife and the caller replied "Reba."  Plaintiff explained that Reba was his former caretaker.  Plaintiff immediately suspected that Reba had stolen his personal identification and opened accounts in his name without his knowledge or consent. Plaintiff further advised the caller of his credit reporting issues and demanded that the caller provide Reba's contact information, but the caller hung up.  Subsequently, Plaintiff advised the credit reporting agencies, his local police department, and the FTC of the call.

31. Since the reporting of the negative accounts began in 2015 and through the present time, Plaintiff has been denied credit on no less than 9 occasions, including a denial of a mortgage by the United States Veterans' Affairs ("VA").

32. Since the reporting of the negative accounts began in 2015 and through the present time, Plaintiff has been unable to purchase a home, and instead, has been forced to put down increased monetary deposits just to be able to rent an apartment.

33. Since the reporting of the negative accounts began in 2015 and through the present time, Plaintiff attempted to purchase a car, but was denied credit on several occasions.

34.  Most recently, Plaintiff and his fiancé had plans to marry in Greece.  Plaintiff applied for financing to purchase an engagement ring, but was denied.  Instead, Plaintiff had to obtain financing from a company that did not require a credit check but only offered an excessively high interest rate.

35. Most recently, Plaintiff tried to obtain financing to pay for his wedding trip to Greece, but Plaintiff was denied.  Unable to afford to pay for his wedding, Plaintiff had no choice but to cancel his wedding plans.  As a result, Plaintiff's fiancé decided to leave Plaintiff.

36. Despite Plaintiff's numerous written disputes to TransUnion and Experian, his phone conversations with same, and his exhaustive efforts in monitoring his credit files and updating

identify theft reports, Defendants continue to report the offending Discover, CSC, and PBCM collections accounts.

37.  Defendants repeatedly failed to conduct a reasonable investigation of Plaintiff's disputes. Defendants repeatedly failed to remove the offending Discover, CSC, and PBCM collection accounts.

38.  As a result of Defendants' conduct, Plaintiff has been denied home ownership and the potential for a happy marriage.  Indeed, Plaintiff has been denied the American Dream.

39.  The entire experience as outlined above has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to his ability to regain a firm foothold on his creditworthiness, credit standing, and credit capacity.

40.  The inaccurate reporting has had significant adverse effects on Plaintiff's credit rating because it creates a false impression that Plaintiff is responsible for the collection accounts rendering Plaintiff a high-risk consumer and damaging his creditworthiness.

41.  Plaintiff suffered monetary damages he otherwise would not have incurred had Defendants timely removed the offending collection accounts.

42.  As a result of the conduct, action, and inaction of the Defendants, Plaintiff has suffered various types of damages as set forth above and herein, including specifically, multiple credit denials, loss of consortium, humiliation, embarrassment, excessive interest rates on credit obtained, increased security deposits for apartment rentals, out-of-pocket expenses, the loss of credit opportunity, decrease in credit score, time expended in preparing and submitting credit reporting disputes, time expended monitoring his credit files, and mental anguish and emotional distress.

43. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel and file this case.

## COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (AGAINST DISCOVER FINANCIAL SERVICES, INC.)

44. Plaintiff restates and realleges paragraphs 1 through 43 as fully set forth herein.

45. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

46. Plaintiff is a "person" as defined by 15 U.S.C. §1681a(b).

47. Discover is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

48. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

49. Discover violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct investigations with respect to the disputed information after receiving requests for an investigation from Plaintiff and Experian.

50. Discover violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Experian pursuant to 15 U.S.C. §1681i(a)(2).

51. Had Discover reviewed the information provided by Plaintiff and Experian, it should have then confirmed that Plaintiff was a victim of identity theft and that the Discover collection account did not belong to Plaintiff. Instead, Discover wrongfully and erroneously confirmed its inaccurate reporting of the unauthorized account as "in collection," with a balance of "$3800," and "over 120 days past due," without conducting a reasonable investigation into Plaintiff's numerous disputes.

52. Discover violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the complete results of the investigation or reinvestigation of Plaintiff's disputes with Experian.

53. Discover violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to report the results of its investigation or reinvestigation to Experian after being put on notice of the inaccurate, incomplete, and misleading information with respect to the unauthorized Discover account.

54. Discover violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the unauthorized Discover account from appearing and reappearing in Plaintiff's credit files.

55. Discover failed to conduct a reasonable investigation of its reporting of the subject Discover account, record that the information was disputed, or delete the inaccurate information from Plaintiff's credit files within 30 days of receiving notice of Plaintiff's disputes from Plaintiff and Experian pursuant to 15 U.S.C. §1681i(a)(1).

56. Discover violated 15 U.S.C. §1681s-2(a)(6)(B) by furnishing the disputed information to Experian after it received multiple notices that Plaintiff is a victim of identity theft.

57. Despite the blatantly obvious errors in Plaintiff's credit files, and Plaintiff's efforts to correct the errors, Discover did not correct the errors.  Instead, Discover wrongfully furnished, and continued to furnish, and re-reported the inaccurate, incomplete and misleading information after Plaintiff's disputes, to one or more third parties.

58. Any reasonable investigation by Discover would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information remains in Plaintiff's credit files.

59. Had Discover taken steps to investigate Plaintiff's valid disputes or Experian's requests for investigation, it might have permanently corrected the erroneous, incomplete, and materially misleading information regarding the unauthorized Discover account.  Plaintiff provided identity theft reports to support his valid disputes in his requests for investigation, yet Discover presumably ignored the supporting evidence and continued to report the Discover collection account.

60.   By deviating from the standards established by the credit reporting industry and the FCRA, Discover acted with reckless and willful disregard for its duty as a furnisher and user to report accurate and complete consumer credit information to Experian.

**WHEREFORE,** Plaintiff, MICHAEL LAMON DANSER, respectfully prays this Honorable Court for the following relief:

a.   Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

a.   An order directing Discover to delete all of the inaccurate information from Plaintiff's credit reports and credit files;

b.   Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

c.   Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

d.   Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

e.   Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

f.   Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST CREDIT SOLUTIONS CORP.)

61.   Plaintiff restates and realleges paragraphs 1 through 43 as fully set forth herein.

62.   Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

63.   Plaintiff is a "person" as defined by 15 U.S.C. §1681a(b).

64.   CSC is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

65.    At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

66.    CSC violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct investigations with respect to the disputed information after receiving requests for an investigation from Plaintiff, Experian, and TransUnion.

67.    CSC violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Experian and TransUnion  pursuant to 15 U.S.C. §1681i(a)(2).

68.    Had CSC reviewed the information provided by Plaintiff, Experian, and TransUnion, it should have then confirmed that Plaintiff was a victim of identity theft and that the CSC accounts did not belong to Plaintiff.  Instead, CSC wrongfully and erroneously confirmed its inaccurate reporting of the unauthorized CSC accounts (as "open," "in collection," one account with a balance of "$3131," and a second account with a balance of "$10,284 and both stemming from debts allegedly owed to Anheuser Busch) without conducting a reasonable investigation into Plaintiff's numerous disputes.

69.    CSC violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the complete results of the investigation or reinvestigation of Plaintiff's disputes with Experian and TransUnion.

70.    CSC violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to report the results of its investigation or reinvestigation to Experian and TransUnion after repeatedly being put on notice of the inaccurate, incomplete, and misleading information with respect to the unauthorized CSC accounts.

71.    CSC violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the unauthorized CSC accounts from appearing and reappearing in Plaintiff's credit files.

72.    CSC failed to conduct reasonable investigations of its reporting of the subject CSC accounts or delete the inaccurate information from Plaintiff's credit files within 30 days of

receiving notice of Plaintiff's disputes from Plaintiff, Experian, and TransUnion pursuant to 15 U.S.C. §1681i(a)(1).

73. CSC violated 15 U.S.C. §1681s-2(a)(6)(B) by furnishing the disputed information to Experian and TransUnion after it received multiple notices that Plaintiff is a victim of identity theft.

74. Despite the blatantly obvious errors in Plaintiff's credit files, and Plaintiff's efforts to correct the errors, CSC did not correct the errors. Instead, CSC wrongfully furnished, and continued to furnish, and re-reported the inaccurate, incomplete and misleading information after Plaintiff's disputes, to one or more third parties.

75. Any reasonable investigation by CSC would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information remains in Plaintiff's credit files.

76. Had CSC taken steps to investigate Plaintiff's valid disputes or Experian and TransUnion's requests for investigation, it might have permanently corrected the erroneous, incomplete, and materially misleading information regarding the unauthorized CSC accounts. Plaintiff provided identity theft reports to support his valid disputes in his requests for investigation, yet CSC presumably ignored the supporting evidence and continued to report the CSC accounts.

77. By deviating from the standards established by the credit reporting industry and the FCRA, CSC acted with reckless and willful disregard for its duty as a furnisher and user to report accurate and complete consumer credit information to Experian and TransUnion.

**WHEREFORE**, Plaintiff, MICHAEL LAMON DANSER, respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  An order directing CSC to delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.  Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
#### (AGAINST PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC.)

78.  Plaintiff restates and realleges paragraphs 1 through 43 as fully set forth herein.

79.  Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

80.  Plaintiff is a "person" as defined by 15 U.S.C. §1681a(b).

81.  PBCM is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

82.   At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

83.   PBCM violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct investigations with respect to the disputed information after receiving requests for an investigation from Plaintiff and TransUnion.

84.  PBCM violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by TransUnion  pursuant to 15 U.S.C. §1681i(a)(2).

85.   Had PBCM reviewed the information provided by Plaintiff and TransUnion, it should have then confirmed that Plaintiff was a victim of identity theft and that the PBCM account did not belong to Plaintiff.   Instead, PBCM wrongfully and erroneously confirmed its inaccurate reporting of the unauthorized PBCM account (as "open," "in collection," and stemming from a debt allegedly owed to Pentagon Federal Credit Union) without conducting a reasonable investigation into Plaintiff's numerous disputes.

86.   PBCM violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the complete results of the investigation or reinvestigation of Plaintiff's disputes with TransUnion.

87.   PBCM violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to report the results of its investigation or reinvestigation to TransUnion after being put on notice of the inaccurate, incomplete, and misleading information with respect to the unauthorized PBCM account.

88.   PBCM violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the unauthorized PBCM account from appearing and reappearing in Plaintiff's credit files.

89.   PBCM  failed to conduct a reasonable investigation of its reporting of the subject PBCM account or delete the inaccurate information from Plaintiff's credit files within 30 days of receiving notice of Plaintiff's disputes from Plaintiff and TransUnion pursuant to 15 U.S.C. §1681i(a)(1).

90.   PBCM violated 15 U.S.C. §1681s-2(a)(6)(B) by furnishing the disputed information to TransUnion after it received multiple notices that Plaintiff is a victim of identity theft.

91.   Despite the blatantly obvious errors in Plaintiff's credit files, and Plaintiff's efforts to correct the errors, PBCM did not correct the errors.   Instead, PBCM wrongfully furnished, and continued to furnish, and re-reported the inaccurate, incomplete and misleading information after Plaintiff's disputes, to one or more third parties.

92.   Any reasonable investigation by PBCM would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information remained in Plaintiff's credit files.

93.   Had PBCM taken steps to investigate Plaintiff's valid disputes or TransUnion's requests for investigation, it might have permanently corrected the erroneous, incomplete, and materially misleading information regarding the unauthorized PBCM account.  Plaintiff provided identity theft reports to support his valid disputes in his requests for investigation, yet PBCM presumably ignored the supporting evidence and continued to report the PBCM account.

94.   By deviating from the standards established by the credit reporting industry and the FCRA, PBCM acted with reckless and willful disregard for its duty as a furnisher and user to report accurate and complete consumer credit information to TransUnion.

**WHEREFORE**, Plaintiff, MICHAEL LAMON DANSER, respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing PBCM to delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT IV – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EXPERIAN INFORMATION SOLUTIONS, INC.)

95.   Plaintiff restates and realleges paragraphs 1 through 43 as fully set forth herein.

96.   Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

97.   Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

98.   At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

99.   At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

100.   The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

101.   The FCRA requires the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

102.   If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

103.   On numerous occasions, Plaintiff provided Experian with all relevant information and documentation in his request for investigation and reinvestigation to support the fact that he was a victim of identity theft.

104.   Experian prepared Plaintiff's credit reports containing inaccurate, incomplete, and materially misleading information by reporting the unauthorized Discover and CSC accounts.

105.   A review of the relevant documents submitted by Plaintiff would have confirmed that the Discover and CSC accounts did not belong to Plaintiff.

106.   Experian failed to conduct any meaningful investigation into Plaintiff's disputes. Instead, it continued to report the false information provided to it by Discover and CSC.

107.   Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it reported and re-reported regarding Plaintiff.   Upon receiving and reviewing information that Plaintiff's credit files had compromised, Experian knew, or should have known, that the Discover account was not authorized by Plaintiff. Instead of following reasonable procedures, Experian repeatedly prepared patently false, incomplete, and materially misleading consumer reports concerning Plaintiff.

108. Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it reported and re-reported regarding Plaintiff.   Upon receiving and reviewing information that Plaintiff's credit files had compromised, Experian knew, or should have known, that the CSC account (with a balance of "3,131") was not authorized by Plaintiff. Instead of following reasonable procedures, Experian repeatedly prepared patently false, incomplete, and materially misleading consumer reports concerning Plaintiff.

109. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct  reasonable investigations to determine whether the disputed information was accurate and to subsequently delete the information relative to the unauthorized Discover account in Plaintiff's credit files.

110. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct  reasonable investigations to determine whether the disputed information was accurate and to subsequently delete the information relative to the unauthorized CSC account in Plaintiff's credit files.

111.  Had Experian taken any steps to investigate Plaintiff's valid disputes, it would have determined that Plaintiff was a victim of identity theft and that the Discover and CSC accounts were not authorized by Plaintiff.

112.  Upon information and belief, Experian took no steps to determine whether the information Discover and CSC were reporting was accurate and reliable.

113. At very minimum, while it conducted an investigation, Experian could have blocked the reporting of the Discover and CSC accounts.  Instead, Experian continued to falsely report the Discover and CSC accounts knowing that they would impact Plaintiff's credit rating.

114.  Experian violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's disputes to Discover. Upon information and belief, Experian also failed to include all relevant information as part of the notice(s) to Discover regarding Plaintiff's disputes that Experian received from Plaintiff.

115. Experian violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's disputes to CSC. Upon information and belief, Experian also failed to include all relevant information as part of the notice(s) to CSC regarding Plaintiff's disputes that Experian received from Plaintiff.

116.  Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the Discover and CSC accounts.

117.  Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's disputes.

118.   Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Discover and CSC that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

119.   Experian violated 15 U.S.C. §1681c(f) by failing to notate that Plaintiff disputed the reporting of the Discover account. Experian is required to notate each account that a consumer disputes in each consumer report that includes the disputed information.

120.   Experian violated 15 U.S.C. §1681c-2(a) by failing to block the information pertaining to the Discover account within 4 days after Plaintiff repeatedly notified Experian of the identity theft.

121.   Experian violated 15 U.S.C. §1681c-2(a) by failing to block the information pertaining to the CSC account within 4 days after Plaintiff repeatedly notified Experian of the identity theft.

122.   Experian violated 15 U.S.C. §1681c-2(b) by failing to promptly notify Discover that the disputed information may be a result of identity theft and block the disputed information as mandated by 15 U.S.C. §1681c-2(a).

123.   Experian violated 15 U.S.C. §1681c-2(b) by failing to promptly notify CSC that the disputed information may be a result of identity theft and block the disputed information as mandated by 15 U.S.C. §1681c-2(a).

124.   Experian violated 15 U.S.C. §1681c-2(c) by failing to promptly notify Plaintiff within the time frame prescribed by 15 U.S.C. §1681i(a)(5)(B) that Discover has declined to block the disputed information.

125.   Experian violated 15 U.S.C. §1681c-2(c) by failing to promptly notify Plaintiff within the time frame prescribed by 15 U.S.C. §1681i(a)(5)(B) that CSC has declined to block the disputed information.

126. Experian knew that the inaccurate reporting of the unauthorized Discover and CSC accounts as belonging to Plaintiff would have a significant adverse effect on Plaintiff's creditworthiness and ability to obtain credit.

127. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

128. Despite actual knowledge that Plaintiff's credit file contained erroneous information, Experian readily and repeatedly reported Plaintiff's inaccurate, incomplete, and misleading reports to one or more third parties, thereby misrepresenting facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

129. By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

130. It is Experian's regular business practice to repeatedly report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

131. Experian's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit file.

132. Experian acted reprehensively and carelessly by reporting and re-reporting the unauthorized Discover and CSC accounts.

133. Experian has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

134.   As stated above, Plaintiff was significantly harmed by Experian's conduct.

**WHEREFORE**, Plaintiff, MICHAEL LAMON DANSER, respectfully prays this Honorable Court for the following relief:

a.   Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.   An order directing Experian to delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c.   Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.   Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e.   Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.   Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g.   Award any other relief as this Honorable Court deems just and appropriate.

### COUNT V – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST TRANSUNION, LLC)

135.   Plaintiff restates and realleges paragraphs 1 through 43 as fully set forth herein.

136.   TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

137.   TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

138.   At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

139.   At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

140.   The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

141.   The FCRA requires the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

142.   If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

143.   Plaintiff provided TransUnion with all relevant information and documentation in his request for investigation and reinvestigation to support the fact that he was a victim of identity theft.

144.   TransUnion prepared Plaintiff's credit reports containing inaccurate, incomplete, and materially misleading information by reporting the unauthorized CSC and PBCM accounts.

145.   A review of the relevant documents submitted by Plaintiff would have confirmed that the two CSC accounts (one with a balance of $3,131 and the other with a balance of $10,284) and the PBCM did not belong to Plaintiff.

146.   TransUnion failed to conduct any meaningful investigation into Plaintiff's disputes. Instead, it continued to report the false information provided to it by CSC and PBCM.

147.   TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it reported and re-reported regarding Plaintiff.   Upon receiving and reviewing information that Plaintiff's credit files had compromised, TransUnion knew, or should have known, that the two CSC accounts

were not authorized by Plaintiff. Instead of following reasonable procedures, TransUnion repeatedly prepared patently false, incomplete, and materially misleading consumer reports concerning Plaintiff.

148. TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it reported and re-reported regarding Plaintiff.   Upon receiving and reviewing information that Plaintiff's credit files had compromised, TransUnion knew, or should have known, that PBCM account was not authorized by Plaintiff. Instead of following reasonable procedures, TransUnion repeatedly prepared patently false, incomplete, and materially misleading consumer reports concerning Plaintiff.

149. TransUnion violated 15 U.S.C. §1681i(a)(1) by failing to conduct  reasonable investigations to determine whether the disputed information was accurate and to subsequently delete the information relative to the two CSC accounts in Plaintiff's credit file.

150. TransUnion violated 15 U.S.C. §1681i(a)(1) by failing to conduct  reasonable investigations to determine whether the disputed information was accurate and to subsequently delete the information relative to the PBCM account in Plaintiff's credit file.

151. Had TransUnion taken any steps to investigate Plaintiff's valid disputes, it would have determined that Plaintiff was a victim of identity theft and that the CSC accounts and PBCM account were not authorized by Plaintiff.

152. Upon information and belief, TransUnion took no steps to determine whether the information CSC and PBCM was reporting was accurate and reliable.

153. At very minimum, while it conducted an investigation, TransUnion could have blocked the reporting of the CSC and PBCM accounts. Instead, TransUnion continued to falsely report the these accounts knowing that they would impact Plaintiff's credit rating.

154. TransUnion violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's disputes to CSC. Upon information and belief, TransUnion also failed to include all relevant information as part of the notice(s) to CSC regarding Plaintiff's disputes that TransUnion received from Plaintiff.

155. TransUnion violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's disputes to PBCM. Upon information and belief, TransUnion also failed to include all relevant information as part of the notice(s) to PBCM regarding Plaintiff's disputes that TransUnion received from Plaintiff.

156. TransUnion violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the CSC and PBCM accounts.

157. TransUnion violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's disputes.

158. TransUnion violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from CSC or PBCM that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

159. TransUnion violated 15 U.S.C. §1681c-2(a) by failing to block the information pertaining to the two CSC accounts within 4 days after Plaintiff repeatedly notified TransUnion of the identity theft.

160.   TransUnion violated 15 U.S.C. §1681c-2(a) by failing to block the information pertaining to the PBCM account within 4 days after Plaintiff repeatedly notified TransUnion of the identity theft.

161. TransUnion violated 15 U.S.C. §1681c-2(b) by failing to promptly notify CSC that the disputed information may be a result of identity theft and block the disputed information as mandated by 15 U.S.C. §1681c-2(a).

162. TransUnion violated 15 U.S.C. §1681c-2(b) by failing to promptly notify PBCM that the disputed information may be a result of identity theft and block the disputed information as mandated by 15 U.S.C. §1681c-2(a).

163.   TransUnion violated 15 U.S.C. §1681c-2(c) by failing to promptly notify Plaintiff within the time frame prescribed by 15 U.S.C. §1681i(a)(5)(B) that CSC and PBCM has declined to block the disputed information.

164.   TransUnion knew that the inaccurate reporting of the unauthorized CSC and PBCM accounts as belonging to Plaintiff would have a significant adverse effect on Plaintiff's creditworthiness and ability to obtain credit.

165.   The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

166.   Despite actual knowledge that Plaintiff's credit file contained erroneous information, TransUnion readily and repeatedly reported Plaintiff's inaccurate, incomplete, and misleading reports to one or more third parties, thereby misrepresenting facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

167.  By deviating from the standards established by the credit reporting industry and the FCRA, TransUnion acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

168.  It is TransUnion's regular business practice to repeatedly report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

169.  TransUnion's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit file.

170.  TransUnion acted reprehensively and carelessly by reporting and re-reporting the unauthorized CSC and PBCM accounts.

171.  TransUnion has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

172.  As stated above, Plaintiff was significantly harmed by TransUnion's conduct.

**WHEREFORE**, Plaintiff, MICHAEL LAMON DANSER, respectfully prays this Honorable Court for the following relief:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  An order directing TransUnion to delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.  Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT VI– VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(AGAINST CREDIT SOLUTIONS CORP.)

173. Plaintiff restates and realleges paragraphs 1 through 43 as though fully set forth herein.

174. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

175. The alleged CSC debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.  Specifically, the alleged debt stems from Anheuser Busch, a company which sells alcoholic beverages to consumers.

176. CSC is a "debt collector" as defined by §1692a(6) because its primary business is the collection of delinquent debts and it regularly collects debts and uses the mail, telephones, and credit reporting to collect delinquent accounts allegedly owed to a third party.

177. Moreover, CSC is a "debt collector" because it acquired rights to the alleged debt after it was in default. 15 U.S.C. §1692a(6).

178. CSC used the credit reporting bureaus, by falsely reporting the alleged debt, in an  attempt to collect it and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

179. CSC's communications were made in connection with the collection of the alleged debt.

180. CSC violated 15 U.S.C. §§1692e, e(2), e(8), and e(10) through its unlawful debt collection practices.

181. CSC violated §1692e by using false, deceptive, and misleading means in connection with collection of the alleged debt. Specifically, CSC reported false and inaccurate information to the

credit reporting agencies in regards to the alleged debt. CSC falsely reported two separate accounts on Plaintiff's credit reports even though Plaintiff was a victim of identity theft and did not legally owe the debt.

182. CSC violated §1692e(2) when CSC misleadingly represented the character, amount, and legal status of the alleged debt on Plaintiff's credit reports in an attempt to dragoon Plaintiff into paying debts not legally owed. At no time did Plaintiff owe the alleged debt, and after repeatedly putting CSC on notice of this misleading representation through Plaintiff's written disputes to Experian and TransUnion, CSC chose to continue to report the alleged debt to the major credit reporting agencies.

183. Defendant violated §1692e(8) by threatening and communicating false and inaccurate information to the major credit reporting agencies regarding the alleged debt in which it knew, or should have known, that it did not belong to Plaintiff. Despite knowingly reporting the derogatory alleged debt on Plaintiff's credit reports and Plaintiff's disputes of the same, CSC continued to report the inaccurate and false information.  Indeed, the inaccurate and false information remains on Plaintiff's Experian and TransUnion credit reports today.

184. CSC violated §1692e(10) by falsely and deceptively representing that Plaintiff owed the alleged debt when it reported it on Plaintiff's credit reports as in collections, with a balance, and a past due amount.  Plaintiff did not owe the alleged debt as CSC knew, or should have known, that Plaintiff was a victim of identity theft.

185. CSC's conduct distressed Plaintiff as he was denied credit on many occasions, as described above, due to CSC's false reporting of the alleged debt.  The false reporting has adversely affected Plaintiff's credit score, damaged Plaintiff's creditworthiness, and has otherwise had a tremendous negative impact on Plaintiff's personal life as more fully described above.

**WHEREFORE**, Plaintiff, MICHAEL LAMON DANSER, respectfully requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the immediate deletion of all adverse credit reporting relating to the alleged debt;

c. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e. Award any other relief as the Honorable Court deems just and equitable.

### COUNT VII– VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(AGAINST PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC.)

186. Plaintiff restates and realleges paragraphs 1 through 43 as though fully set forth herein.

187. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

188. The alleged alleged debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.  Specifically, the alleged debt stems from Pentagon Federal Credit Union, a company which extends both credit cards and personal loans to consumers.

189. PBCM is a "debt collector" as defined by §1692a(6) because its primary business is the collection of delinquent debts and it regularly collects debts and uses the mail, telephones, and credit reporting to collect delinquent accounts allegedly owed to a third party.

190. Moreover, PBCM is a "debt collector" because it acquired rights to the alleged debt after it was in default. 15 U.S.C. §1692a(6).

191. PBCM used the credit reporting bureaus, by falsely reporting the alleged debt, in an attempt to collect it and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

192. PBCM's communications were made in connection with the collection of the alleged debt.

193. PBCM violated 15 U.S.C. §§1692e, e(2), e(8), and e(10) through its unlawful debt collection practices.

194. PBCM violated §1692e by using false, deceptive, and misleading means in connection with collection of the alleged debt. Specifically, PBCM reported false and inaccurate information to the credit reporting agencies in regards to the alleged debt. PBCM falsely reported the alleged debt on Plaintiff's credit report even though Plaintiff was a victim of identity theft and did not legally owe the debt.

195. PBCM violated §1692e(2) when PBCM misleadingly represented the character, amount, and legal status of the alleged debt on Plaintiff's credit reports in an attempt to dragoon Plaintiff into paying a debt not legally owed. At no time did Plaintiff owe the alleged debt, and after repeatedly putting PBCM on notice of this misleading representation through Plaintiff's written disputes to TransUnion, PBCM chose to continue to report the alleged debt to the major credit reporting agencies.

196. PBCM violated §1692e(8) by threatening and communicating false and inaccurate information to the three major credit reporting agencies regarding the alleged debt in which it knew, or should have known, that it did not belong to Plaintiff. Despite knowingly reporting the derogatory alleged debt on Plaintiff's credit reports and Plaintiff's disputes of the same, PBCM continued to report the inaccurate and false information.

197. PBCM violated §1692e(10) by falsely and deceptively representing that Plaintiff owed the alleged debt when it reported it on Plaintiff's credit reports as in collections, with a balance,

and a past due amount.  Plaintiff did not owe the alleged debt as PBCM knew, or should have known, that Plaintiff was a victim of identity theft.

198. PBCM's conduct distressed Plaintiff as he was denied credit on many occasions, as described above, due to PBCM's false reporting of the alleged debt.  The false reporting has adversely affected Plaintiff's credit score, damaged Plaintiff's creditworthiness, and has otherwise had a tremendous negative impact on Plaintiff's personal life as more fully described above.

**WHEREFORE**, Plaintiff, MICHAEL LAMON DANSER, respectfully requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the immediate deletion of all adverse credit reporting relating to the alleged debt;

c. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e. Award any other relief as the Honorable Court deems just and equitable.

**Plaintiff demands trial by jury.**

Dated: May 27, 2020                                        Respectfully Submitted,

                                                          /s/ Majdi Y. Hijazin
                                                          Majdi Y. Hijazin, *Of Counsel*
                                                          *Counsel for Plaintiff*
                                                          Sulaiman Law Group, Ltd
                                                          2500 S. Highland Ave., Ste. 200
                                                          Lombard, IL 60148
                                                          Phone: (630) 575-8181
                                                          mhijazin@hijazinlaw.com